**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DELMA WARMACK-STILLWELL, on behalf of herself and all others similarly situated, | |
| Plaintiff, | |
| v. | Case No.: 22-cv-04633 |
| | **CLASS ACTION COMPLAINT** |
| CHRISTIAN DIOR, INC., | |
| Defendant. | <u>DEMAND FOR JURY TRIAL</u> |

## CLASS ACTION COMPLAINT

DELMA WARMACK-STILLWELL, individually and on behalf of other members of the below-defined classes (collectively, the "Class"), brings this Class Action Complaint against Defendant CHRISTIAN DIOR, INC. ("Dior" or "Defendant"), and based upon Plaintiff's personal knowledge, investigation by retained counsel, and personal belief alleges as follows:

## NATURE OF THE CASE

1.     This is a data privacy case that stems from the data collection, data retention policies, and business practices of Dior, in connection with the embedded Virtual Try-On feature on their websites, which captures, collects, stores, and uses customers' biometric data without the notice or consent required by law.

2.     Consumers expect that, if they are sharing their data with a company in connection with a potential transaction, that the company will be transparent about what data is being collected, how the data is being used and by whom, and how long the data is being kept.[1]  This is particularly the cases when a company collects what has come to be known as "biometric data."

3.     However, unbeknownst to users of its website, Dior surreptitiously[2] collected vast troves of private and/or personally identifiable user data without user consent—including unique biometric information and biometric identifiers.

---

[1] Lisa Joy Rosner, How Biometric Data Will Shift The Privacy Conversation, *Forbes* (July 2, 2019), *available at* https://www.forbes.com/sites/forbescommunicationscouncil/2019/07/02/how-biometric-data-will-shift-the-privacy-conversation/?sh=38b3ce093f4c.

[2] While Dior eventually tried to correct its misconduct—adding a pop-up screen to the Virtual Try-On feature on its website—the pop-up only makes minimal disclosures regarding Dior's collection and use of biometric information and biometric identifiers, and requires that consumers click an "I agree" button prior to being able to use the Virtual Try-On feature for the first time (the "Pop-Up Date").  Warmack does not know the exact date that the current pop-up screen was added to the Virtual Try-On feature, other than that it was after January 15, 2022.  The pop-up screen is only shown the first time a potential customer accesses the Virtual Try-On feature on a given device. No disclosures are made and no "consent" is given during subsequent use of the Virtual Try-On feature.  The pop-up screen also contains two separate links to Dior's privacy policy, neither of which is functional.

4.      Dior is a luxury fashion brand which sells a broad range of products, including fashionable glasses and sunglasses (collectively "Eyewear") in brick-and-mortar locations and through its website.

5.      One of the benefits of shopping in a brick-and-mortar location versus online is the ability to try an item on before you buy it.  Since April 2021, Dior has provided an online equivalent for its Eyewear.

6.      One of the primary ways Dior markets its Eyewear is through a "Virtual Try-On" feature on its website, which allows a potential customer to virtually try on sunglasses and other non-prescription glasses, allowing them to see how the Eyewear would look on them when worn.

7.      In order to show a potential customer how the Eyewear would look on their face, Dior's Virtual Try-On feature uses potential customers' facial geometry and facial recognition software to position the Eyewear on the potential customer's face and keep it there as the potential customer moves their head to see the Eyewear from different angles.

8.      Dior's website allows any potential customer who visits the website to virtually try on the Eyewear the company sells. This embedded Virtual Try-On feature, once engaged, asks for permission to use the customer's camera.  Visitors to Dior's website can also use the Virtual Try-On feature by uploading a photo of themselves instead. Dior then scans the consumer's face geometry from their camera or from the uploaded photo and uses the scan to position the Eyewear on the consumer's face.

9.      The Virtual Try-On feature is able to accurately detect in an instant where a pair of glasses should be placed on an individual's face, regardless of whether the user allows the use of their webcam, or if the user uploads a photo. When a webcam is used, the Virtual Try-On feature moves the Eyewear as the individual moves their head, allowing the user to see the Eyewear from

different angles while still accurately placed on the user's face. The Virtual Try-On feature does this by using facial recognition technology provided by a company named FittingBox.[3]

10. Dior licenses the Virtual Try-On feature technology from FittingBox.

11. In connection with licensing the Virtual Try-On feature, Dior agreed to comply with all applicable data protection, privacy and security laws, including BIPA.

12. In connection with licensing the Virtual Try-On feature from FittingBox, Dior agreed that the collection and processing of end users' personal data, whether directly or indirectly, was Dior's responsibility.

13. FittingBox's technology enables Dior to collect users' biometric identifiers and biometric information such as face geometry scans.

14. At Dior's behest, FittingBox collects and stores user data on its servers during the Virtual Try-On process.

15. During the Virtual Try-On process, Dior and FittingBox both have full access to, and so are in possession of users' biometric information and biometric identifiers, including users' face geometry.

16. On information and belief, FittingBox also transmitted users' face geometry scans from users' devices to at least one of Dior's servers.

17. Facial scanning technology, which is used for anything from applying filters to photographs to verifying a user's identity, uses biometric data.

---

[3] FittingBox acknowledges on its website that it employs facial detection technology to provide these highly-realistic simulations.

18.      Consumers have substantial privacy concerns regarding the use of facial scanning.[4] According to a recent survey, more than 80% of consumers are uncomfortable with apps storing images of their faces.[5] And for good reason: for example, in the not-too-distant past, a relatively unknown company, Clearview AI, scraped user photos from social media companies' databases, and used facial-recognition technology on those photos to compile a database for secret and illicit surveillance purposes.[6]

19.      In response to the ever-increasing prevalence and proliferation of biometric information collection (whether lawful or not), the Illinois General Assembly passed the Biometric Information Privacy Act of 2008, 740 Ill. Comp. Stat. 14, *et seq*. ("BIPA").

20.      BIPA recognizes that because biometric information is "unlike other unique identifiers that are used to access finances or other sensitive information," in that it cannot be changed and is "biologically unique to the individual," special protections needed to be placed upon its use, collection, retention, and destruction.

21.      In the language of the BIPA statute itself, the Illinois General Assembly directly addressed the public's stake in this important sphere of data privacy, noting that "[a]n overwhelming majority of members of the public *are weary of the use of biometrics when such*

---

[4] New Survey on Biometric Technology Shows Consumers Are OK With Some Forms and Wary of Others, *UT News* (May 3, 2018), https://news.utexas.edu/2018/05/03/new-survey-on-consumer-attitudes-toward-biometric-technology/.

[5] Danielle Commisso, Concerns Grow Over Consumer Privacy and Facial Recognition Tech, Civic Science (Apr. 20, 2021), *available at* https://civicscience.com/concerns-grow-over-consumer-privacy-and-facial-recognition-tech/#:~:text=Like%20most%20new%20technologies%2C%20younger%20generations%20are%20more, facial%20recognition%20use%20on%20social%20media%20and%20apps.

[6] Will Knight, Clearview AI Has New Tools to Identify You in Photos, *Wired* (Oct. 4, 2021), *available at* Clearview AI Has New Tools to Identify You in Photos | WIRED.

*information is tied to finances and other personal information.*" 740 Ill. Comp. Stat. 14/5(d) (emphasis added).

22.     Recognizing that typical consumers are not equipped to defend themselves from large corporations bent on acquiring and monetizing their most private, unchangeable information, the Illinois Legislature, by enacting BIPA, gave consumers a powerful, protective tool.

23.     Despite consumer concerns regarding facial-scanning technology, and BIPA's clear mandate, during the Relevant Period Dior did not inform users that Dior was using technology on its website to collect their biometric information and biometric identifiers, including facial scans, or ask for their consent to do so.

24.     Dior sells the image of luxury to consumers, inviting them to virtually "try on" its designer eyewear through its website's embedded "Virtual Try-On" feature. Through this feature, visitors to Dior's website—including Plaintiff and the other Class members—are able to view themselves in a pair of expensive, designer sunglasses. All a user has to do is enable their computer or phone camera to provide a live view of their face to be used by the website or upload their photo to the website.

25.     But, unbeknownst to its website users—including Warmack and the other Class members—Dior collects detailed and sensitive biometric identifiers and biometric information, including complete facial scans, of its website visitors through the Virtual Try-On feature, and during the Relevant Period it did so without first obtaining their consent, or informing them that their biometric data is being collected or stored.

26.     Dior also failed to provide Virtual Try-On feature users with the specific purpose for the collection of their biometric information or biometric identifiers, or a schedule setting out

the length of time during which users' biometric information or biometric identifiers will be collected, stored, used, or will be destroyed.

27. During the Relevant Period, Dior did not obtain the consent, much less the written consent, of the users of the Virtual Try-On feature embedded in Dior's website prior to collecting users' biometric data.

28. Because Dior is collecting biometric identifiers and biometric information from users of its Virtual Try-On feature; was not disclosing this fact during the Relevant Period; did not develop or follow a retention policy for the biometric identifiers or biometric information; and did not obtain the consent of the users of Dior's Virtual Try-On feature during the Relevant Period; and profited from the biometric identifiers and biometric information it possessed, Dior is in violation of the Illinois Biometric Privacy Act, 740 ILCS 14 *et seq.* ("BIPA").

29. Dior violated BIPA each and every time a website visitor based in Illinois used the Virtual Try-On feature during the Relevant Period, because Dior collected and stored or facilitated the storage of website users' biometric information or biometric identifiers without disclosure to or consent of any of the consumers who use the Virtual Try-On feature on Dior's website.

30. As a result of Dior's BIPA violations, Plaintiff, individually and on behalf of the other Class members, asks the Court to impose upon Dior the BIPA-mandated statutory penalties relating to the collection, storage, and disclosure of Plaintiff's biometric identifiers and biometric information, as well as injunctive relief requiring Dior's destruction of already-collected and stored information, and its adoption of disclosures which inform consumers about Dior's collection of their biometric data and identifiers.

## **PARTIES**

### A. **Plaintiff**

31. Delma Warmack-Stillwell is, and was at all relevant times, a citizen and resident of

7

the City of Blue Island, in Cook County, in the State of Illinois.

32.    Beginning in August, 2021, Warmack began to visit dior.com/en_us/ to search for sunglasses.

33.    Over the next three months, Warmack visited the site and used the Dior Virtual Try-On feature approximately 10 times.

34.    Each of the times she used the Virtual Try-On feature, Warmack spent approximately fifteen minutes using the tool.

35.    Each time Warmack used the Virtual Try-On feature, she did so on her phone, while in the State of Illinois.

36.    Each time Warmack used the Dior Virtual Try-On feature, Dior captured, collected, obtained, possessed, and/or used Warmack's facial geometry.

37.    Upon information and belief, Dior also stored Warmack's facial geometry thereafter.

38.    Dior did not inform Warmack in writing that it was capturing, collecting, storing, obtaining, or using scans of their facial geometry; did not inform Warmack in writing of the specific purpose and length of time for which their facial geometry was being collected, stored, or used; and did not obtain a written release from Warmack authorizing Dior to capture, collect, store, obtain, or use their facial geometry.

39.    Warmack has never been informed of the specific purposes or length of time for which Dior collected, stored, or used their facial geometry; any biometric data retention policy developed by Dior; or whether Dior will ever permanently delete their biometric data.

40.    Warmack does not know whether Dior has destroyed—or will destroy—the biometric identifiers and biometric information collected from Warmack.

### B.     Defendant

41.     Christian Dior, Inc. is an American company, incorporated in the State of New York, with its principal place of business at 19 East 57th Street, New York, NY 10022-2506. Christian Dior, Inc. is the North American operating subsidiary of Christian Dior SE, a French luxury fashion house based in Paris, France.

## JURISDICTION AND VENUE

42.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because: (a) this is a proposed class action in which there are at least 100 Class members; (b) the parties are minimally diverse, as Plaintiff and Defendant are domiciled in different states; and (c) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs.

43.     This Court has personal jurisdiction over Dior because Dior regularly conducts business throughout Illinois.

44.     Venue is also appropriate in this District because a substantial part of the events or omissions giving rise to the claims below alleged occurred in Illinois. 28 U.S.C. § 1391(b)(1)-(2).

## FACTUAL ALLEGATIONS

### C.     The BIPA Legal Framework

45.     The Illinois General Assembly enacted BIPA to protect the privacy rights of consumers in Illinois, including every Illinois resident who has their unique, biometric identifiers captured, collected, stored, or used by a private entity, including by self-interested, profit-driven companies like Dior.

46.     In enacting BIPA, the General Assembly found that the sensitivity of biometric information and biometric identifiers warrants heightened protection when collected by companies from consumers like Warmack because "[t]he use of biometrics is growing" in the business sector

and "[t]he full ramifications of biometric technology are not fully known." 740 ILCS § 14/5(a) and (f).

47.   The General Assembly recognized that "[b]iometrics are unlike other unique identifiers" like social security numbers because they are "biologically unique to the individual" and cannot be changed if compromised. 740 ILCS § 14/5(c). Thus, an individual whose biometrics are compromised "has no recourse" and "is at heightened risk for identify theft." *Id*. Therefore, "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id*. § 14/5(f).

48.   BIPA defines "biometric identifiers" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id*. § 14/10.

49.   A scan of face geometry is a "biometric identifier" whether it is derived from a real time scan through one's webcam or phone camera or from a photograph.

50.   "Biometric information" is identified as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers. *Id*.

51.   Accordingly, BIPA requires "private entities"—including companies like Dior— that collect certain biometric identifiers or biometric information to take a number of specific steps to safeguard consumers' data; inform consumers of the entities' uses, retention of, and destruction of their biometric identifiers and biometric information; and obtain informed consent before collecting such data. 740 ILCS § 14/15.

52.   Specifically, companies, including Dior, that collect the above-referenced

biometric identifiers or biometric information must obtain informed consent from consumers prior to collecting such data from them, and they must publicly disclose to consumers their uses, retention of, and a schedule for destruction of the biometric information or biometric identifiers that they do collect.

53.    With respect to safeguarding biometrics, BIPA requires that private entities—including companies like Dior—that possess biometric identifiers or biometric information must:

> [D]evelop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS § 14/15(a).

54.    BIPA also requires that any private entity in possession of biometric identifiers or biometric information—including companies like Dior—must safeguard such data "using the reasonable standard of care within the private entity's industry" and must "store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." 740 ILCS § 14/15(e).

55.    With respect to informed consent, BIPA provides:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
>> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>>
>> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term

for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS § 14/15(b).

56. BIPA further provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS § 14/l5(c).

57. Under BIPA, private entities—including companies like Dior—are prohibited from disclosing, redisclosing, or otherwise disseminating a consumer's biometric identifiers or biometric information unless the consumer has consented to the disclosure or redisclosure. 740 ILCS § 14/15(d).

58. BIPA provides for statutory damages, injunctive relief, reasonable attorney's fees and costs, and other relief "as the State or federal court may deem appropriate" when a private entity violates a consumer's rights under the statute. 740 ILCS § 14/20. Where a violation is the result of negligence, BIPA provides for the greater of actual damages or $1,000 in liquidated damages per violation, and if the violation was intentional or reckless, the greater of actual damages and liquidated damages of $5,000 per violation. *Id*.

**D. <u>Dior Collects Potential Customers' Biometrics Through The Virtual Try-On Feature On Its Website</u>**

59. Dior is a global luxury fashion house that markets and sells a variety of high-end products, ranging from haute couture clothing to ready-to-wear, shoes, watches, jewelry, accessories, non-prescription glasses and sunglasses.

60. Dior sells its products through standalone boutiques, lease departments in high-end departmental stores, and through the e-commerce section of its website.

12

61.     Dior operates Dior's North American website, and markets and sells Dior products (including Eyewear) through that website.

62.     Dior sells Eyewear through its website, where website users can use the "Virtual Try-On" feature to see how Dior's Eyewear would look on the face of the user.

63.     When consumers view a pair of sunglasses for which the Virtual Try-On feature is available, Dior invites them to access the Virtual Try-On by presenting a "Try Online" button that appeared (and still appears) in close proximity to the image for the product being viewed (indicated below by the red arrows).



64.    When consumers click the "Try Online," button, they are taken to a Virtual Try-On overlay where the consumer can use their web or phone camera or an uploaded photo to display a real-time image of themselves wearing the Eyewear in question.

65.    During the Relevant Period, clicking on the "Try Online" button would activate consumers' webcams or phone cameras automatically, so that their real-time image would appear as soon as they clicked the button.[7]

---

[7] When accessing the website through a browser, the user's webcam may not automatically activate, but this is only because the user has not yet given the website access to the webcam using the browser's or device's security settings.



66.     Once the webcam or phone is on, users see the Dior Eyewear placed on their face, which moves and changes angles to comport with the user's facial movements and adjustments in real time.

67.     The Virtual Try-On feature is able to accurately detect, in an instant, where the chosen Dior Eyewear should be placed on an individual's face, and moves the product with the user's movements to ensure that it appears as if the user is actually wearing the Eyewear.

68.     Dior also gives its website users—including Warmack and the other Class members—the option to take a photo of the chosen Eyewear displayed on their faces, and to save the image on their device for sharing or later review.

69.     Instead of using the real-time Virtual Try-On feature on Dior's website, a user may instead upload a photo of their face, after which Dior will place the Eyewear in the correct place on the user's photograph. Uploading a photo still requires the use of facial scans to determine the correct placement of the Eyewear on a user's face.

70.     The Virtual Try-On feature on Dior's website is powered by an application

embedded in Dior's product webpages, which was created by FittingBox.

71.    Dior incorporates FittingBox's proprietary technology into its website to collect and process the user's facial geometry through the Virtual Try-On feature, which allows for the proper placement of Dior's Eyewear on the user's face in real time.

72.    The Virtual Try-On feature on Dior's website can capture, collect, or store the user's facial geometry via a live webcam or phone camera feed or from photos, regardless of whether the photo is taken by the user through their webcam or phone camera while using the Virtual Try-On feature, or uploaded to the Virtual Try-On overlay. These facial-geometry scans are used to identify the shape and features of the user's face in order to accurately, and virtually, overlay Dior Eyewear onto the user's facial image.

73.    According to FittingBox, the application "detects face features instantly, adapts them to movements automatically and fits the frames on the face under 400 milliseconds."

74.    FittingBox boasts that its "real-time rendering engine brings realism to new heights with accurate tracking and attention to frame details. It can handle complex materials and lighting effects to provide ultra-realistic frame and lens renderings."

75.    FittingBox, as the developer of this software, markets its product at least in part on its ability to capture, collect, store, and use users' biometric data in order to market products to them.

76.    While using Dior's Virtual Try-On feature, the user's biometric information and biometric identifiers are collected and transferred to FittingBox's server, located at the address indicated below:

77.     An analysis of the data sent from the user's device to those servers while using the Virtual Try-On feature indicates that FittingBox is collecting the user's biometric data and storing it on its servers.

```
3      {
4          "referenceCameraIndex": 0,
5          "recognitionSceneDatas": [
6              {
7                  "inputImage": "/9j/4AAQSkZJRgABAQAAAQABAAD/
2wBDAAoHBwgHBgoICAgLCgoLDhgQDg0NDh0VFhEYIx8lJCIfIiIEmKzcvJik0KSEiMEExNDk7Pj4
+JS5ESUM8SDc9Pjv/
2wBDAQoLCw4NDhwQEBw7KCIoOzs7Ozs7Ozs7Ozs7Ozs7Ozs7Ozs7Ozs7Ozs7Ozs7Ozs7Ozs7
Ozv/wAARCAHgAoADASIAAhEBAxEB/8QAHwAAAQUBAQEBAQEAAAAAAAAAAECAwQFBgcICQoL/
8QAtRAAAgEDAwIEAwUFBAQAAAF9AQIDAAQRBRIhMUEGE1FhByJxFDKBkaEII0KxwRVS0fAkM2JyggkKFhcYGRolJ
icoKSo0NTY3ODk6Q0RFRkdISUpTVFVWV1hZWmNkZWZnaGlqc3R1dnd4eXqDhIWGh4iJipKTlJWWl5iZmqKjpKWmp6ipqr
6ipqrKztLW2t7i5usLDxMXGx8jJytLT1NXW19jZ2uHi4+Tl5ufo6erx8vP09fb3+Pn6/
8QAHwEAAwEBAQEBAQEBAQAAAAAAAAECAwQFBgcICQoL/
8QAtREAAgECBAQDBAcFBAQAAQJ3AAECAxEEBSExBhJBUQdhcRMiMoEIFEKRobHBCSMzUvAVYnLRChYkNOEl8RcYGTJicoKSo0NTY3
RomJygpKjU2Nzg5OkNERUZHSElKU1RVVldYWVpjZGVmZ2hpanN0dXZ3eHl6goOEhYaHiImKkpOUlZaXmJmaoqOkpaanqKmqssLDxMXGx8jJ
aanqKmqsrO0tba3uLm6wsPExcbHyMnK0tPU1dbX2Nna4uPk5ebn6Onq8vP09fb3+Pn6/
9oADAMBAAIRAxEAPwDVeydTuQ5oSd4jtkWtEAEcBnNt0tPU1dbX2Nna4uPk5ebn6Onq8vP09fb3+Pn6/
9oADAMBAAIRAxEAPwDVeydTuQ5oSd4jtkWtEAEcBn96eYIpVw2PzqonXTxlxT83NT7cjg4yOtV7jSmJ3QS
Y9jUG+7tfl1jLr2PpWTp22N2NPckkURsBkluEsn
+1ipSOefXmosy00RN1x2rP1dPJ05yDndxWhlLW74rN1xmFiAR94gCmkAmlqVs4+pWktVrKPbbRD/
AGRVtV7Vm1qdcWiVBU6jBqJAamGc4qGjjRSRMnWrMZ75JJ2UsnLDYyxqen5VQu9V7b9H3e/
+VffrV+GFI
+nJ9TS7uaXe01IylUciTOKN1R7hmjf2FBnoShqdASLSClA780YkAnv6UgSS57qCSTTGYDvPTPBBzzTFYlJHrTCwNNO
SetJt4607DOQ8UyZ1ONQeyiuziUqij0AriPEeG12NR/
eQV2xY49M1s17qJbHE1GzUhkGOtRtLg4qbCuPZjjBqPePWmszMvPFNAwM5p2E2SFyelJ
+NMB54pQRTsIUnHemEk0rflTS2O340MZJDGZZlUdzzWrcLuSs7T5FFyCx6jA
+tarkBTmtobGb0Zlvxrk5rH1DCqxz9K1bmTDGsWl3Z3SpSNkbFxOs2mwNgfdR/
```

78.     The above HTTP request shows the user's image being sent to the FittingBox server, encoded in Base 64.[8] Using a "Base 64 to image" decoder, one is able to reproduce the image taken from the user's device, which is collected and stored on the FittingBox server.

79.     The processing and capturing of biometric identifiers out of users' images are done on a FittingBox server, and then returned to the user's device, as illustrated by the below response from the server while the user is using Dior's Virtual Try-On feature.

---

[8] Due to its length, only a portion of the Base 64 image code sent to FittingBox's server is included above for reference.

```
                                                            144.7 kB    JSON ∨   RESPONSE BODY   ∧

21            ]
22          },
23  ∨       "recognitionSceneDatas": [
24  ∨         {
25  ∨           "cameraFocal": {
26                "x": 595.2000122070312,
27                "y": 595.2000122070312
28            },
29  ∨           "cameraCenterPoint": {
30                "x": 320,
31                "y": 240
32            },
33  ∨           "eyesPoints": [
34  ∨             {
35                  "x": 259,
36                  "y": 233.5
37              },
38  ∨             {
39                  "x": 330.5,
40                  "y": 234
41              }
42            ],
43  ∨           "detectedPoints": [
44  ∨             {
45                  "x": 213,
46                  "y": 237
```

80.     Upon information and belief, this biometric data is also transferred to Dior's servers, and stored therein.

81.     During the relevant period, Dior did not make any of this information available to the public. As a result, there was no indication to a website user that such information was being collected and/or stored when they used Dior's Virtual Try-On feature.

82.     During the Relevant Period, Dior did not inform consumers who used the Virtual Try-On feature (in writing or otherwise) that it was capturing, transferring, and facilitating the processing and storage of their facial geometry—a biometric identifier that BIPA specifically protects—or the specific purpose and length of term for which Dior was collecting, storing, facilitating the processing or storing of, or using such data.

83.     During the relevant period, Dior did not obtain consumers' informed written consent before capturing or collecting their biometric identifiers or biometric information through the Virtual Try-On feature.

84.     During the Relevant Period, there was no approval, agreement, or confirmation process that a consumer was required to go through in order to use Dior's Virtual Try-On feature, and no warning that Dior was about to capture, collect, or store the user's biometric data.

85.     Dior also did not make publicly available a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information obtained from consumers, as required by BIPA.

86.     Upon information and belief, during the Relevant Period, Dior had not developed a written policy establishing retention schedules and guidelines for permanently destroying consumers' biometric identifiers and biometric information, and did not destroy such data within the timeframes established by BIPA.

87.     Dior profited from consumers' biometric identifiers and biometric information by providing the Virtual Try-On feature to improve the customers' experience on Dior's website, and increase sales of its Eyewear.

88.     Upon information and belief, Dior's sales of Eyewear increased as a result of the inclusion of the Virtual Try-On feature on Dior's website, and requisite facial scans generated by the Virtual Try-On feature.

89.     Upon information and belief, Dior captured, collected, obtained, stored, and used website users' biometric information and biometric identifiers for purposes other than "the

facilitation of showing you what your selected product would look like on you (in relation to using our virtual beauty technology."[9]

90.     Dior's knowing capture, collection, storage, and use of website users' biometric information and biometric identifiers without obtaining the consent required by BIPA, is intentional.

91.     Dior's knowing capture, collection, storage, and use of website users' biometric information and biometric identifiers without obtaining the consent required by BIPA, is willful.

92.     By knowingly capturing, collecting, storing, obtaining, or using website users' biometric information and biometric identifiers, without obtaining the consent required by BIPA, Dior is engaging in conduct evincing a reckless disregard for its website users' rights.

93.     By knowingly capturing, collecting, obtaining, storing, or using website users' biometric information and biometric identifiers, without obtaining the consent required by BIPA, Dior is engaging in intentional misconduct or conduct which smacks of intentional misconduct.

## FRAUDULENT CONCEALMENT AND TOLLING

94.     All applicable statutes of limitation have been tolled by Dior's knowing and active fraudulent concealment and denial of the facts alleged herein through the time period relevant to this action.

95.     Instead of disclosing Dior's practice of capturing, collecting, possessing, storing, obtaining, and using potential customers' biometric data, Dior conceals this practice by not

---

[9] See Dior's "Privacy Policy" in effect during the Relevant Period, which states, under the heading "FOR WHAT PURPOSES are your data used by Dior?":  "As part of our relationship, depending on the context in which your data is collected, we use your data for: *** the facilitation of showing you what your selected product would look like on you (in relation to using our virtual beauty technology), and for certain in-store virtual try ons, offering you the option of receiving your photo via email."   https://www.dior.com/en_us/personal-data#christian-dior-privacy-policy-privacy-statement-christian-dior (accessed on February 28, 2022).

disclosing it to potential customers or otherwise making the information publicly available. Dior conceals its practices from its website users to encourage them to use Dior's Virtual Try-On feature.

96.     Despite reasonable diligence on Warmack's part, Warmack remained ignorant of the factual bases for Warmack's claims for relief. Dior's withholding of material facts concealed the claims alleged herein and tolled all applicable statutes of limitation.

## CLASS ALLEGATIONS

97.     **Class Definition**. Plaintiff seeks certification of the Class set forth herein pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), as applicable, and (c)(4). Specifically, Plaintiff seeks class certification of all claims for relief herein on behalf of a Class defined as follows:

> All persons whose biometric identifiers were captured, collected, stored, or used by Defendant through use of the Virtual Try-On feature on Defendant's websites, including www.dior.com/en_us/fashion, while residing in Illinois from the date on which Defendant began providing the Virtual Try-On feature.

The Relevant Period is determined to the fullest extent allowed by law. Excluded from the Class are Dior and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court staff assigned to this case and their immediate family members. Warmack reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

98.     **Numerosity (Rule 23(a)(1)).** The proposed Class is sufficiently numerous that individual joinder of all Class members is impracticable. While Plaintiff believes that there are tens of thousands of Class members, the precise number of Class members is presently unknown to Plaintiff, but may be ascertained from Dior's books, records, and electronically stored information. Class members may be notified of the pendency of this action by recognized, Court-

approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

99.     **Commonality (Rule 23(a)(2)).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

  a.     Whether Dior qualifies as a "private entity" as defined by 740 Ill. Comp. Stat. 14/10;

  b.     Whether Dior captures, collects, stores, or distributes information that qualifies as "biometric information" or "biometric identifiers" of users of the Virtual Try-On feature on Dior's website, as defined by 740 Ill. Comp. Stat. 14/10 and 740 Ill. Comp. Stat. 14/15, *et seq*.;

  c.     Whether Dior developed or made publicly available a written policy establishing a retention schedule and guidelines for destroying its Virtual Try-On feature users' biometric information and biometric identifiers, 740 Ill. Comp. Stat. 14/15(a) requires;

  d.     Whether Dior obtained an executed written release from each user of Dior's Virtual Try-On feature before capturing their biometric information and biometric identifiers, as 740 Ill. Comp. Stat. 14/15(b) requires;

  e.     Whether Dior, previously or on an ongoing basis, collected, captured, purchased, received through trade, or otherwise obtained its website users' biometric identifiers or biometric information through its Virtual Try-On feature on its website, in violation of 740 Ill. Comp. Stat. 14, *et seq*.;

  f.     Whether Dior sold, leased, traded, or otherwise profited from Virtual Try-

On feature users' biometric identifiers or biometric information;

g. Whether Dior's conduct was willful, reckless, or negligent;

h. The appropriate measure of damages to award Warmack and the other Class members; and

i. The appropriate injunctive relief to which Warmack and the other Class members are entitled.

100. **Typicality (Rule 23(a)(3)).** Warmack's claims are typical of the other Class members' claims because Warmack and each of the other Class members used the same Virtual Try-On feature on Dior's website, through which Dior collected, captured, purchased, received through trade, or otherwise obtained their biometric identifiers or biometric information, and did not inform Plaintiff or the other Class members of such collection, capture, purchase, receiving through trade, or otherwise obtaining of such biometric identifiers or biometric information, and did not obtain written consent for this same capture, collection, purchase, receiving through trade, or otherwise obtaining of biometric information or biometric identifiers from Warmack or the other Class members.

101. **Adequacy of Representation (Rule 23(a)(4)).** Warmack is an adequate Class representative because her interests do not conflict with the interests of the other Class members who she seeks to represent, Warmack has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where a defendant breached statutory obligations, and Warmack intends to vigorously prosecute this action. Class members' interests will be fairly and adequately protected by Warmack and Warmack's counsel.

102.    **Predominance & Superiority (Rule 23(b)(3)).** Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

103.    **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Dior acted or refused to act on grounds generally applicable to Warmack and the other Class members, thereby making appropriate final injunctive relief and/or declaratory relief, as described below.

104.    **Particular Issues (Rule 23(c)(4)).** Warmack also satisfies the requirements for maintaining a class action under Rule 23(c)(4). Warmack's claims consist of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**VIOLATION OF 740 ILCS 14/15(b)**
**Failure to Inform in Writing and Obtain Written Release from Consumers Prior to Capturing, Collecting, or Storing Biometric Identifiers**
**Damages and Injunctive Relief**
***Alleged on Behalf of Delma Warmack Individually and on Behalf of the Class***

105.    Warmack reasserts, realleges, and incorporates by reference each of the allegations contained in paragraphs 1 through 104 as though full set forth herein.

106.     Warmack brings this claim individually and on behalf of the other Class members.

107.     During the Relevant Period, Dior, through the Virtual Try-On feature, collected, captured, or otherwise obtained Warmack's and other Class members' facial geometry.

108.     Facial geometry is a biometric identifier protected by BIPA.

109.     During the Relevant Period Dior was, and currently still is, in possession of the biometric identifiers and biometric information collected, captured, or otherwise obtained by Dior through the use of Dior's Virtual Try-On feature.

110.     BIPA prohibits private entities like Dior from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining peoples' biometric identifiers or biometric information without first informing them in writing of such activities; informing them in writing of the specific purpose and length of term for which biometric identifiers or biometric information are being collected, stored, and used; and obtaining a written release executed by the people whose biometric identifiers or biometric information is being collected.

111.     During the Relevant Period, Dior did not inform its website users in writing that their biometric identifiers or biometric information will be collected through the use of the Virtual Try-On feature on Dior's website; did not inform them in writing of the specific purpose and length of time that their biometric identifiers or biometric information are being collected, stored, or used; and did not obtain a written release from its website Virtual Try-On feature users prior to collecting, capturing, purchasing, receiving through trade, or otherwise obtaining their biometric identifiers or biometric information.

112.     Warmack and the other Class members have been injured by Dior's conduct alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, and violations of their privacy due to Dior's collection, capture, and storage of their

biometric identifiers and biometric information, and the sharing of that data with third parties; accordingly the imposition of statutory damages under BIPA is appropriate here.

## SECOND CAUSE OF ACTION
### VIOLATION OF 740 ILCS 14/15(a)
### Failure to Develop and Make Publicly Available a Written Policy for Retention and Destruction of Biometric Identifiers
### Damages and Injunctive Relief
### *Alleged on Behalf of Delma Warmack Individually and on Behalf of the Class*

113.   Warmack reasserts, realleges, and incorporates by reference each of the allegations contained in paragraphs 1 through 104 as though full set forth herein.

114.   Warmack brings this claim individually and on behalf of the other Class members.

115.   During the Relevant Period, Dior, through the Virtual Try-On feature, collected, captured, or otherwise obtained Warmack's and other Class members' facial geometry.

116.   Facial geometry is a biometric identifier protected by BIPA.

117.   During the Relevant Period Dior was, and currently still is, in possession of the biometric identifiers and biometric information collected, captured, or otherwise obtained by Dior through the use of the Virtual Try-On feature.

118.   BIPA requires private entities, like Dior, in possession of biometric identifiers or biometric information to develop and comply with a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

119.   During the Relevant Period, Dior did not develop, possess, publish to its website users, or comply with such a written policy, as required by BIPA.

120.     As a result, Dior denied Warmack and Class members their right under BIPA to be made aware of Dior's retention and destruction policies as to their biometric identifiers, and their right under BIPA to have Dior comply with the required retention and destruction policies as to their biometric identifiers and biometric information.

121.     Additionally, Dior's failure to develop and comply with the required retention and destruction policies placed Warmack's and Class members' sensitive biometric identifiers and biometric information at risk of compromise or illicit use.

122.     Because Dior has not provided a schedule by which Warmack and Class Members' information will be destroyed, Dior may currently possess Warmack's and Class members' biometrics and may be using or distributing them to third parties without Warmack's or Class members' permission. Such a violation of privacy constitutes irreparable harm for which there is no adequate remedy at law.

123.     Warmack and the other Class members have been injured by Dior's conduct alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, and violations of their privacy due to Dior's collection, capture, and storage of their biometric identifiers and biometric information, and the sharing of that data with third parties; accordingly the imposition of statutory damages under BIPA is appropriate here.

124.     Moreover, an injunction is warranted pursuant to 740 Ill. Comp. Stat. § 14/20(4), requiring Dior to develop and comply with a written policy for the retention and destruction of biometric identifiers and biometric information in Dior's possession, and to information Plaintiff and the other Class members of the terms of that policy, after ensuring that Plaintiff's and the other Class members' biometric identifiers and biometric information in Dior's possession have been destroyed.

**THIRD CAUSE OF ACTION**
**VIOLATION OF 740 ILCS 14/15(c)**
**Prohibition Against Selling, Leasing, Trading, Or Otherwise Profiting From A Person's**
**Biometric Identifiers Or Biometric Information**
**Damages and Injunctive Relief**
*Alleged on Behalf of Delma Warmack Individually and on Behalf of the Class*

125.    Warmack reasserts, realleges, and incorporates by reference each of the allegations contained in paragraphs 1 through 104 as though full set forth herein.

126.    Warmack brings this claim individually and on behalf of the other Class members.

127.    During the Relevant Period, Dior, through the Virtual Try-On feature, collected, captured, or otherwise obtained Warmack's and other Class members' facial geometry.

128.    Facial geometry is a biometric identifier protected by BIPA.

129.    During the Relevant Period Dior was, and currently still is, in possession of the biometric identifiers and biometric information collected, captured, or otherwise obtained by Dior through the use of the Virtual Try-On feature.

130.    BIPA prohibits private entities, like Dior, in possession of biometric identifiers or biometric information from selling, leasing, trading, or otherwise profiting from those biometric identifiers or biometric information.

131.    Dior provides the Virtual Try-On feature on its website in order to increase online sales of its Eyewear.

132.    Dior provides the Virtual Try-On feature on its website as a way for potential customers to try Dior's Eyewear on before they buy it.

133.    Dior's potential customers are more likely to buy an expensive, luxury item such as Dior's Eyewear, if they can see what it would look like on them first.

134.    It is the facial geometry scans collected, captured, or otherwise obtained by Dior through use of the Virtual Try-On feature that allow for the proper placement of the virtual Eyewear on website users' faces, so the users can see how the Eyewear looks on them when worn.

135.    Upon information and belief, Dior's Eyewear sales have increased since Dior began offering the Virtual Try-On feature on its website, including during the Relevant Period.

136.    As a result, Dior violated BIPA by unlawfully selling, leasing, trading, or otherwise profiting from individuals' biometric identifiers and biometric information, including the biometric identifiers and information of Warmack and the other Class members.

137.    Warmack and the other Class members have been injured by Dior's conduct alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, violations of their privacy due to Dior's collection, capture, and storage of their biometric identifiers and biometric information, and violation of their rights in and ownership of their unique biometric identifiers and biometric information through Dior's profiting from the same; accordingly the imposition of statutory damages under BIPA is appropriate here.

138.    Moreover, an injunction is warranted pursuant to 740 Ill. Comp. Stat. § 14/20(4), requiring Dior to stop selling, leasing, trading, or otherwise profiting from Warmack's and the other Class members' biometric identifiers or biometric information.

**REQUEST FOR RELIEF**

139.    Wherefore, Warmack, individually and on behalf of the Class, requests an order granting the following relief:

    a.    Finding that this action satisfies the requirements for maintenance as a class action as set forth in Rule 23 of the Federal Rules of Civil Procedure and certifying the class defined herein;

    b.    Appointing Warmack as representative of the Class and the undersigned counsel as class counsel;

c.      Entering judgment in favor of Warmack and the Class and against Defendant;

d.      Awarding Warmack and the Class liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages, whichever is greater, for each of Defendant's violations of BIPA;

e.      Issuing an injunction ordering Defendant to comply with BIPA going forward and to disclose to Warmack and Class members whether Defendant possesses their biometric identifiers or biometric information, Defendant's uses of their biometric identifiers and biometric information; and Defendant's retention and destruction policies regarding their biometric identifiers and biometric information;

f.      Issuing an injunction ordering Defendant to comply with BIPA by preparing, producing, or adopting a publicly published retention and destruction policy for the biometric information and biometric identifiers it collects;

g.      Issuing an injunction ordering Defendant to comply with BIPA going forward by stopping selling, leasing, trading, or otherwise profiting from Warmack's and the other Class members' biometric identifiers or biometric information;

h.      Awarding reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, as provided for in 740 ILCS 14/20; and

i.      Granting further relief as the Court deems appropriate.

## JURY TRIAL REQUESTED

Warmack, individually and on behalf of the other Class members, requests a trial by jury on all claims so triable.

Dated: August 30, 2022

Respectfully submitted,

By: */s/ Amy E. Keller*
Adam J. Levitt
alevitt@dicellolevitt.com
Amy E. Keller
akeller@dicellolevitt.com
Nada Djordjevic
ndjordjevic@dicellolevitt.com
James Ulwick
julwick@dicellolevitt.com
**DICELLO LEVITT LLC**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900

*Counsel for the Plaintiff and Putative Class*